**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD P. DAWSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 10 C 0850 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner Richard Dawson's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the Court denies Dawson's Section 2255 motion. Further, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## FACTUAL BACKGROUND

In September 2001, Dawson helped organize and execute an armed robbery of a retail and wholesale butcher shop in Maywood, Illinois called Morris' Meat Packing. Dawson first learned of Morris' Meat Packing as a potential robbery target from a friend who claimed to have knowledge of the shop's operations. This friend told Dawson that the business often had large amounts of cash on its premises. Dawson conveyed this information to co-defendant Anthony Calabrese, who immediately expressed an interest in robbing the butcher shop. Calabrese then told Dawson to get as much information as possible about the store and to arrange a meeting between himself, Dawson, and Dawson's source, which Dawson eventually did. After the meeting, Calabrese began making arrangements to rob Morris' Meat Packing.

Thereafter, Calabrese recruited Edmond Frank for the robbery and Dawson recruited David Sims. Calabrese, Dawson, Frank, and Sims met at Sims' house on the morning of the armed robbery, September 17, 2001. While Dawson contacted his source to get some last minute information about the butcher shop, Calabrese sat at Sims' kitchen table, loaded his gun, and discussed the robbery with Sims. Sims asked if he needed to bring his gun to the robbery and Calabrese or Dawson indicated that he should.

The group then left Sims' house in two vehicles and drove to a location in Maywood where they left Sims' truck. Thereafter, they proceeded to the butcher shop in one vehicle. During the drive, Calabrese told Frank and Dawson that they were going inside of the butcher shop. Frank agreed, but Dawson did not. As such, when they arrived, Calabrese, Sims, and Frank proceeded inside, while Dawson remained in the car as the get-away driver.

Both Calabrese and Sims entered the butcher shop with firearms. Once inside, they walked through the store to a back office where Calabrese confronted one of the store's owners, who was sitting in the office talking with a neighborhood acquaintance. Upon entering the office, Calabrese brandished his weapon and demanded money from the owner, who gave Calabrese approximately $1,500 from an office file cabinet. Calabrese then directed the owner to a second office where the owner gave Calabrese an additional $14,000 and a gun. Before leaving the butcher shop, Calabrese demanded the owner's driver's license stating that if he did not keep his mouth shut, Calabrese would kill the owner's children.

Calabrese, Sims, and Frank then fled the store to the get-away car. When the group reconvened later that afternoon, Calabrese paid Dawson $1,000 for his participation in the robbery.

2

**PROCEDURAL BACKGROUND**

On September 14, 2006, a grand jury returned a Second Superseding Indictment charging Dawson with one count of armed robbery in violation of 18 U.S.C. § 1951 and one count of brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). On January 23, 2007, the Court presided over Dawson's change of plea hearing at which time Dawson entered a plea of guilty to the firearm charge pursuant to a written plea agreement. On February 19, 2009, the Court conducted Dawson's sentencing hearing and sentenced him to a total term of 60 months imprisonment. The Court then entered Dawson's judgment on February 23, 2009. Dawson did not file a direct appeal to the Seventh Circuit. Instead, he filed the present Section 2255 motion.

Under the terms of his written plea agreement, Dawson waived his right to directly appeal his sentence or to collaterally attack his sentence pursuant to Section 2255. Specifically, Dawson's written plea agreement stated in relevant part: "Defendant is also aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, Defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction or the manner in which that sentence was determined, in exchange for the concessions made by the United States in this Plea Agreement." (R. 129-1, Plea Agmt. at 9.) Further, Dawson's plea agreement unequivocally stated that: "Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255." (*Id.*)

At Dawson's January 23, 2007 change of plea hearing, that the Court asked Dawson:

> In addition, you have agreed to waive your right to challenge the sentence
> or manner in which it was determined in any collateral attack, including a Section

3

2255 motion. Do you understand that?

(Change of Plea Hr'g, at 22.) Dawson answered yes. (*Id*.) The Court further stated:

> There is a limited exception to that waiver, Mr. Dawson, and I stress that it is limited. The waiver does not apply to a claim of voluntariness or ineffective assistance of counsel relating directly to the waiver or its negotiation. Do you understand that?

(*Id*.) Dawson answered yes. (*Id*.) The Court also asked Dawson if anyone had threatened him to plead guilty or made promises to cause him to plead guilty to which Dawson answered no. (*Id.* at 23.) In addition, the Court asked Dawson if his decision to plead guilty was entirely voluntary, and Dawson answered yes. (*Id.*)

## LEGAL STANDARD

"[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). Under Section 2255, relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack.*" Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255). A Section 2255 motion is not a substitute for a direct criminal appeal nor is it a means by which a defendant may appeal the same claims a second time. *See Varela v. United States,* 481 F.3d 932, 935 (7th Cir. 2007) (Section 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal.") (citation omitted). As such, if a Section 2255 petitioner does not raise a claim on direct appeal, that claim is barred from the Court's collateral review unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal, *see Fuller v.*

4

*United States,* 398 F.3d 644, 648 (7th Cir. 2005), that enforcing the procedural default would lead to a "fundamental miscarriage of justice," *see Anderson v. Benik,* 471 F.3d 811, 815 (7th Cir. 2006), or a change of circumstances involving facts or law. *See Varela,* 481 F.3d at 935-36. Because claims of constitutionally ineffective assistance of counsel usually involve evidence outside the record, such claims may be brought for the first time in a Section 2255 motion. *See Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003).

## ANALYSIS

**I.    Waiver**

Construing his pro se Section 2255 motion and legal memorandum liberally, *see McGee v. Bartow,* 593 F.3d 556, 565-66 (7th Cir. 2010), Dawson brings the following ineffective assistance of counsel claims: (1) his trial counsel failed to explain the charges against him; (2) his trial counsel provided ineffective assistance of counsel at sentencing; and (3) his trial counsel was constitutionally ineffective based on counsel's failure to file a notice of appeal.

The government argues that because Dawson waived his right to bring a Section 2255 motion as a condition of his plea agreement, his ineffective assistance of trial counsel claims must fail. To clarify, a plea agreement is a contract that is governed by ordinary contract law principles. *See United States v. Patterson,* 576 F.3d 431, 438 (7th Cir. 2009). In general, waivers are valid if they are made knowingly and voluntarily and the waiver's language is express and unambiguous. *See United States v. Chapa,* 602 F.3d 865, 868 (7th Cir. 2010). In the context of a Section 2255 motion, a petitioner who expressly waives his right to file a Section 2255 motion as part of his written plea agreement may seek post-conviction relief only if he can demonstrate that the waiver was either: (1) unknowing or involuntary; or (2) the result of the

ineffective assistance of counsel in connection with the negotiation of the plea agreement. *See Mason v. United States,* 211 F.3d 1065, 1069 (7th Cir. 2000). In short, a criminal defendant who has waived his right to seek post-conviction relief is barred from raising ineffective assistance of counsel claims relating to anything other the issue of whether the waiver itself was deficient. *See Mason,* 211 F.3d at 1069; *Bridegman v. United States*, 229 F.3d 589, 591-92 (7th Cir. 2000).

In his Section 2255 motion and legal memorandum, Dawson does not argue that his attorney's negotiation or advice concerning his plea agreement was deficient or that his guilty plea was unknowing or involuntary. Instead, Dawson argues that his trial counsel was constitutionally ineffective because he failed to explain the charges against him. During his change of plea proceeding, however, Dawson admitted that he had read the count he pleaded guilty to, his lawyer had explained to him the nature of the charge, and that he understood the charge. (Change Plea Hr'g, at 9-10.)

Meanwhile, in his legal memorandum, Dawson explains that his presentence report (PSR) report had been completed almost two years prior to his sentencing and his counsel talked to him about his PSR over the telephone in a hasty manner. (R. 3-1, Section 2255 Memo., at 6.) Dawson further argues that he "was not able to object to the use of priors dropped, nolle prosequie [sic] or dismissed cases, which are now prejudicing the petitioner in the ability of rehabilitation and other programs while incarcerated at the Federal Correctional Complex." (*Id.*) In sum, Dawson's argument about his counsel's ineffectiveness concerning counsel's failure to explain the charges against him does not implicate the voluntariness of his plea nor does it establish that counsel's performance was constitutionally ineffective in relation to the negotiation of the plea agreement.

Dawson's next argument is that his trial counsel provided ineffective assistance of counsel at sentencing. In particular, Dawson maintains that his counsel was ineffective and prejudiced him because counsel did not adequately argue Dawson's mitigating attributes in the sentencing memorandum. Again, Dawson's argument does not go to the voluntariness of his guilty plea or counsel's negotiation of the plea agreement that would except his waiver as required under established Seventh Circuit case law. *See Mason,* 211 F.3d at 1069.

Last, Dawson maintains that his counsel was ineffective for failing to file a notice of appeal, yet Dawson unequivocally waived his right to directly appeal his sentence in his written plea agreement. Moreover, during Dawson's change of plea hearing on January 23, 2007, the Court asked Dawson: "You have agreed in Paragraph 12 of your plea agreement to waive your right to appeal the sentence imposed by the Court .... [a]s long as the sentence is within the 20-year maximum provided by statute. Do you understand that?" (Change Plea Hr'g, at 21-22.) Dawson answered yes. (*Id.* at 22.) Because Dawson waived his right to appeal his sentence, this last claim fails.

## II.     Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Dawson a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

Section 2255 petitioners do not have the absolute right to appeal a district court's denial of their motions – instead they must first request a COA. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003). In cases where a district court denies a

claim on procedural grounds without reaching the merits of the underlying constitutional claims, such is the case here, a COA should issue if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack v. McDaniel,* 529 U.S. 473, 485, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

Here, the Court can find no reason why reasonable jurists would debate or disagree with this Court's ruling that Dawson waived the right to bring his Section 2255 motion and did not overcome this waiver by establishing that his guilty plea was unknowing or involuntary or that his trial counsel was constitutionally ineffective in negotiating his plea. Therefore, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court denies Petitioner Richard Dawson's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Further, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Dated:** October 26, 2010

                                              **ENTERED**

                                              */s/ Amy J. St. Eve*
                                              **AMY J. ST. EVE**
                                              **United States District Court Judge**